UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO INDEMNITY COMPANY,
GEICO GENERAL INSURANCE COMPANY, and
GEICO CASUALTY COMPANY,

                        Plaintiffs,

        -against-

JONATHAN LANDOW, M.D.,
PARAMOUNT MEDICAL SERVICES, P.C.,
PREFERRED MEDICAL, P.C.,
SOVEREIGN MEDICAL SERVICES, P.C.,
BIRCH MEDICAL & DIAGNOSTIC, P.C.,
SPRUCE MEDICAL & DIAGNOSTIC, P.C.,
SUMMIT MEDICAL SERVICES, P.C.,
EASTERN MEDICAL PRACTICE, P.C.,
MACINTOSH MEDICAL, P.C.,
and JOHN DOE DEFENDANTS "1-10",

                        Defendants.
_____

**MEMORANDUM & ORDER
21-CV-1440 (NGG) (RER)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company ("GEICO" or "Plaintiffs") bring this action against Jonathan Landow, M.D., Paramount Medical Services, P.C., Preferred Medical, P.C., Sovereign Medical Services, P.C., Birch Medical & Diagnostic, P.C., Spruce Medical & Diagnostic, P.C., Summit Medical Services, P.C., Eastern Medical Practice, P.C., Macintosh Medical, P.C., and John Doe Defendants "1-10" ("Defendants"), alleging that Defendants defrauded GEICO in violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO," 18 U.S.C. § 1962(c)), by submitting thousands of fraudulent bills for no-fault insurance charges. (*See*

1

Compl. ¶¶ 393-571). Plaintiffs allege common law fraud and un-
just enrichment and seek a declaratory judgment as to all
pending bills. (*Id.*) Defendants now move to dismiss pursuant to
Fed. R. Civ. P. 12(b)(6) for failure to state a claim for relief. (*See*
Mot. to Dismiss (Dkt. 36-1)). For the reasons that follow, Defend-
ants' motion to dismiss is DENIED.

## I.   BACKGROUND

### A.   Factual Allegations

The court takes the following statement of facts largely from the
Complaint, the well-pled factual allegations of which are ac-
cepted as true for the purposes of deciding the Defendants'
motion. *See N.Y. Pet Welfare Ass'n, Inc. v. City of N.Y.*, 850 F.3d
79, 86 (2d Cir. 2017).

Plaintiffs are corporations authorized to issue automobile insur-
ance policies and conduct business in New York. (*See* Compl. ¶
9.) Defendants Paramount Medical Services, P.C., Preferred
Medical, P.C., Sovereign Medical Services, P.C., Birch Medical &
Diagnostic, P.C., Spruce Medical & Diagnostic, P.C., Summit
Medical Services, P.C., Eastern Medical Practice, P.C., and Mac-
intosh Medical, P.C. (the "PC Defendants") are professional
corporations with their principal places of business in New York.
(*See id.* ¶¶ 15-22.) Defendant Landow owns and controls all PC
Defendants. (*See id.* ¶ 10.) He resides in Florida and has been
licensed to practice medicine in New York since 1988. (*See id.*)

Under New York Law, an automobile insurer must provide no-
fault insurance benefits ("Personal Injury Protection" or "PIP
Benefits") to the people they insure ("Insureds") for necessary
healthcare expenses resulting from automobile injuries, for up to
$50,000. *See* N.Y. Ins. Law §§ 5101, *et. seq.*; N.Y. Comp. Codes
R. & Regs. tit. 11 §§ 65, *et. seq.* Often, Insureds assign their right
to PIP Benefits to healthcare providers in exchange for services,
leaving it to the provider to file the claims. N.Y. Comp. Codes R.

& Regs. tit. 11 § 65.311(a). But providers may not receive PIP Benefits if they fail to meet any applicable New York licensing requirement. § 65.316(a)(12). After receiving a claim, an insurance company must pay it in full within thirty days, or else incur interest charges at two percent per month. §§ 65-3.8-3.9.

The Complaint alleges that since 2016, Landow operated the PC Defendants to perpetrate frauds exploiting New York's no-fault insurance laws by using billing codes that exaggerated or misrepresented the services actually performed; by submitting claims for services that were medically unnecessary and were billed according to a pre-determined, fraudulent scheme designed to enrich Defendants; and by performing services and billing for them pursuant to an improper kickback and referral scheme. (*See* Compl. ¶¶ 1-8; 50-53.) Further, Plaintiffs allege that Landow did not personally practice medicine through the PC Defendants at all, but rather arranged for unaffiliated independent contractors to provide the services, in violation of New York law. (*See id.* ¶ 4.) Additionally, Plaintiffs claim that Landow, through his operation of the PC Defendants, engaged in a pattern of racketeering activity in violation of the RICO statute, 18 U.S.C. § 1962(c), arising out of predicate violations of the federal mail fraud statute, 18 U.S.C. § 1341. (*See id.* ¶¶ 403, 423, 443, 463, 483, 503, 523, 543, 564-65.) These violations include allegedly submitting thousands of fraudulent claims by mail, which the Defendants were not entitled to submit because of their violations of licensing codes and New York's no-fault insurance benefits laws. (*See id.*)

1.   The Alleged Kickback and Referral Scheme

According to Plaintiffs, Landow set up the PC Defendants to operate from numerous clinics in Brooklyn, Queens, and the Bronx pursuant to an improper kickback and referral scheme. (*See* Compl. ¶ 60.) New York law prohibits licensed healthcare providers from paying or accepting kickbacks in exchange for

referrals. *See e.g.,* N.Y. Educ. §§ 6509-a, 6530(18), 6531. Additionally, unlicensed persons are prohibited from practicing the profession and thus also prohibited from sharing fees collected for professional services. *See* N.Y. Educ. §§ 6512, 6530(19). Furthermore, when an ownership interest is shared or a compensation arrangement between healthcare providers exists, patients can be referred between the providers only if that financial relationship is disclosed. N.Y. Pub. Health § 238-d.

GEICO alleges that the clinics were set up by laypersons as a "revolving door" for healthcare providers, such as the PC Defendants. (*See* Compl. ¶¶ 63, 68.) Specifically, rather than advertising for patients or building brand recognition, which is the standard business practice for medical providers like the PC Defendants, here, Defendants allegedly relied on licensed and/or unlicensed persons (John Doe Defendants "1-10") to control patient flow. (*See* Compl. ¶¶ 56, 57, 70.) In exchange for payments from Defendants, the clinics referred Insureds to the PC Defendants. (*See id.* ¶ 69.) According to Plaintiffs, these payments were disguised as fees to lease space at the clinics, but the lease payments were in fact tied to the number of patients treated and the services performed. (*See id.* ¶¶ 76-88.) Plaintiffs further allege that Landow knew of and facilitated the arrangement. (*See id.*) GEICO in part relies on multiple Examinations Under Oath ("EUO"), an investigatory procedure used by insurance companies, conducted with Landow. (*See* Compl. ¶¶ 72, 79, 81.) During the EUO, Landow testified to lease agreements being dependent on the average number of patients for each PC Defendant. (*See id.*)

Finally, Plaintiffs claim that Landow induced patient referrals among the various PC Defendants. (*See* Compl. ¶ 89.) GEICO asserts that they received no claims or other documents indicating that disclosures of common ownership were made to the Insureds, and argues that self-referral (a permissible practice if

disclosed) would not have been apparent to the Insureds because Landow did not perform any of the services himself. (*See* Compl. ¶¶ 92-93.)

### 2. The Use of Independent Contractors and Licensing Violations

Plaintiffs allege that Defendants violated New York law by billing or receiving payment for services provided by independent contractors and because Landow did not himself practice medicine through the PC Defendants. (*See* Compl. ¶¶ 356, 374.) New York law requires that individuals providing services through professional service corporations be authorized by law to render those services. *See* N.Y. Bus. Corp. Law § 1504. Further, a professional services corporation may not receive insurance payments for health care services provided by an independent contractor. *See* 11 N.Y.C.R.R. § 65-3.11; *Gov't Emp. Ins. Co. v. Badia*, No. 13-CV-1720 (CBA)(VMS), 2015 WL 1258218, at *8-*9 (E.D.N.Y. Mar. 18, 2015) (finding that for a medical professional corporation to be eligible for no-fault reimbursement under New York law, its physicians cannot be independent contractors). Lastly, a shareholder of a professional corporation must be engaged in the practice of the profession through that corporation and be authorized by law in New York state to practice the profession. N.Y. Bus. Corp. Law § 1507; *see also State Farm Mut. Auto. Ins. Co. v. Mallela*, 4. N.Y.3d 313, 320-22 (N.Y. 2005) (holding that non-physicians are prohibited from being a shareholder in a medical service corporation).

GEICO alleges that Defendants submitted charges for services performed by physicians who did not work exclusively for the PC Defendants. (*See* Compl. ¶¶ 358-62.) Furthermore, Plaintiffs claim that even if Landow did supervise or interpret the various medical services rendered by the contractors, he was not qualified to do so. (*See id.* ¶ 359.) The Complaint alleges that the use

of independent contractors is inferred from the facts that Defendants did not pay employee benefits; did not maintain W-4 or I-9 forms; required physicians to fund their own malpractice insurance; allowed physicians to have non-exclusive relationships; did not provide unemployment or workers' compensation benefits; and filed corporate and payroll tax return forms that suggest the use of independent contractors. (*See id.* ¶ 365.) Finally, GEICO asserts that Landow has lived fulltime in Florida since 2019, that he did not train or oversee employees, and that he remains unqualified to supervise many of the services that the PC Defendants provide. (*See* Comp. ¶¶ 375-78.)

### 3.   The Pre-Determined Billing Protocol and Misrepresented Services

Plaintiffs allege that the healthcare services provided by Defendants were pursuant to a pre-determined treatment and billing protocol and that the services often were not medically necessary. (*See* Compl. ¶ 98.) These schemes were driven by Landow. (*See id.* ¶¶ 101, 103.) Indicators of fraud allegedly include the use of billing codes that did not accurately reflect the amount of time spent with the patient; the use of boilerplate follow-up reports; the improper use of pre-printed questionnaires; and the adoption of a standardized approach to certain procedures such as electrodiagnostic testing, medically useless LINT/TPII treatments, and medically unnecessary acupuncture, resulting in practices that did not follow medical standards.[1] (*See id.* ¶¶ 108, 112, 166, 168, 173, 213, 237, 260, 272.) In sum, GEICO claims that the Defendants submitted bills that either reflected medically unnecessary treatment or misrepresented the services rendered and argues that the bills were products of improper kickback and referral schemes. (*See id.* ¶¶ 97-103.)

---

[1] Plaintiffs explain in detail the alleged fraudulent services in paragraphs 97-354 of the Complaint.

## B.   Procedural History

Plaintiffs initiated this action against Defendants on March 18, 2021, seeking over $3,900,000 in compensatory damages; punitive damages; treble damages pursuant to 18 U.S.C. § 1964(c); and a declaratory judgment against another $12,750,000 in unpaid, pending claims. (*See* Compl. ¶¶ 393-571.) The Complaint alleges 26 causes of action based on civil RICO, common law fraud, and unjust enrichment. (*See id.*) GEICO alleges that through his operation of the PC Defendants, Landow committed a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), involving repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341. (*See id.*) Furthermore, Plaintiffs seek a judgment declaring that Defendants have no right to receive payment for any pending bills. (*See id.* ¶¶ 393-400.)

On August 4, 2021, Plaintiffs filed a motion to stay and enjoin a series of underlying, related collections proceedings. (*See* Mot. to Stay (Dkt. 30).) Defendants moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) on September 10, 2021. (*See generally* Mot. to Dismiss (Dkt. 36).)

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[2] A complaint must contain facts that do more than present "a sheer possibility that a defendant has acted unlawfully." *Id*. In deciding a defendant's motion to dismiss, the court "will accept all factual allegations in the [c]omplaint as true and draw all reasonable inferences in Plaintiff's favor." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d

---

[2] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

Cir. 2011). However, the court will not credit "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court must evaluate the "well-pleaded factual allegations" and "determine whether they plausibly give rise to an entitlement of relief." *Id.* Even when, before discovery, "facts are peculiarly within the possession and control of the defendant," the complaint must still provide "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegality." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).

Plaintiffs who bring claims involving allegations of fraud must also satisfy the heightened pleading standard set forth by Rule 9(b), which demands that "[i]n alleging fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Courts are especially scrutinizing of such fraud claims when they are the predicate acts to a civil RICO allegation. *See, e.g., Gutterman v. Herzog*, No. 20-CV-1081, 2020 WL 6728787, at *3 (E.D.N.Y Nov. 16, 2020); *see also Curtis & Assoc., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 166-67 (E.D.N.Y. 2010). To meet the Rule 9(b) standard, the Second Circuit has held that a claim alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016). In addition, the plaintiff must plead the defendant's mental state, alleging facts "that give rise to a strong inference of fraudulent intent." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015). "[A]llegations may be based on information and belief when facts are particularly within the opposing party's knowledge, provided that they adduce specific facts supporting a strong inference of fraud." *Alix v. McKinsey & Co., Inc.*, 23 F.4th 196, 209

(2d Cir. 2022) (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990)).

The purpose of Rule 9(b) is "to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *Exelis*, 824 F.3d at 25. Accordingly, courts of this Circuit have frequently noted that alleged RICO violations "must be reviewed with appreciation of the extreme sanctions it provides, so that actions traditionally brought in state courts do not gain access to treble damages and attorney fees in federal court simply because they are cast in terms of RICO violations." *Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1001 (E.D.N.Y. 1995).

## III. DISCUSSION

Defendants have filed a motion to dismiss GEICO's claims pursuant to Rule 12(b)(6). Defendants argue that the Complaint does not allege RICO violations with requisite particularity and fails to allege fraud under Rule 9(b). Defendants also maintain that the court should exercise its discretion and abstain from hearing the declaratory judgment claims.

### A. The RICO Allegations

To state a civil RICO claim, a plaintiff must show "(1) a violation of the RICO statute, (2) an injury to business or property, and (3) that the injury was caused by the RICO violation." *Alix*, 23 F.4th at 203.

The first element – violation of the RICO statute – has its own seven elements: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) of the

activities of which affect interstate or foreign commerce."[3] *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). As to the third element, causation, the plaintiff must show that the predicate offense was both the but-for and proximate cause of the injury. *See Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010).

Here, Defendants argue that the Complaint fails to properly allege elements under 18 U.S.C. § 1962(c) because GEICO makes conclusory statements based on broad generalizations. (*See* Mot. to Dismiss at 9.) Defendants argue that Plaintiffs insufficiently plead predicate acts pursuant to Rule 9(b); fail to properly allege a pattern of racketeering; and do not adequately plead causation. (*See* Mot. to Dismiss at 9-18.) Plaintiffs argue in response that they have adequately pled the predicate acts of racketeering by alleging numerous violations of the federal mail fraud statute based on fraudulent billing and that they have properly pled a pattern of racketeering by demonstrating open-ended continuity. (*See* Opp'n. to Mot. to Dismiss at 21-27 (Dkt. 36-4).) Plaintiffs further argue that their reliance on thousands of bills submitted by Defendants caused them to pay nearly four million dollars in fraudulent claims. (*See id.*)

1. Pleading Predicate Acts with Requisite Specificity under Rule 9(b)

When the predicate acts are violations of the federal mail fraud statute, the plaintiff must allege "(1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission

---

[3] Defendants do not question elements five through seven in their Motion to Dismiss. However, the court notes that these elements are satisfied because Landow directly participates in the PC Defendants, which constitute an enterprise, and these activities affect interstate commerce when the Defendants bill GEICO.

facilities in furtherance of the scheme." *Allstate Ins. Co. v. Lyons*, No. 11-CV-2190 (PKC)(PK), 2016 WL 11430776, at *5 (E.D.N.Y. Sept. 12, 2016). In a complaint with multiple defendants, "Rule 9(b) requires that a plaintiff allege facts specifying each defendant's contribution to the fraud." *Allstate Ins. Co. v. Rozenberg*, 771 F. Supp. 2d 254, 263-64 (E.D.N.Y. 2011). However, "the complaint need not be specific as to each allegation of mail or wire fraud when the nature of the RICO scheme is sufficiently pleaded so as to give notice to the defendants." *Id.* at 264; *see also Aiu Ins. Co. v. Olmecs Med. Supply, Inc.*, No. 04-CV-2934, 2005 WL 3710370, at *11 (E.D.N.Y. 2005) (recognizing that temporal or geographical particularity is unnecessary when the overall fraudulent scheme is pled with adequate particularity). Lastly, to allege "the use of interstate mails," a plaintiff need only show that each defendant "acted with knowledge that the use of the mails will follow in the ordinary course of business." *Lyons*, 2016 WL 11430776, at *5.

Defendants argue that Plaintiffs fail to meet Rule 9(b)'s specificity requirement. (*See* Mot. to Dismiss at 9-14.) They contend that the claim fails to identify specific mailings and that the fraudulent claims are conclusory because every patient's treatment must be evaluated on a case-by-case basis. (*See id.*) Such arguments are without merit. GEICO alleges that Defendants used interstate mail to submit thousands of fraudulent bills pursuant to a pre-determined protocol. The Complaint sufficiently alleges the existence of a scheme to defraud, describing exaggerated, misrepresented, or medically unnecessary billed-for services, a pre-determined treatment protocol, and violations of New York licensing and no-fault laws.

Defendants ask the court to instead apply the approach from *State Farm Mutual Insurance Company v. Carefree Land Chiropractic, LLC*, in which a court in the District of Maryland found that, where allegations of fraudulent billing for 550 patients

stemmed from aggregate statistical analysis rather than individualized analyses of each patient, the complaint did not satisfy the required specificity. No. 18-CV-1279, 2018 WL 6514797 at *3-4 (D. Md. Dec. 11, 2018). (*See* Mot. to Dismiss at 12-13.) Accordingly, Defendants argue that Plaintiff's claims must fail because GEICO's Complaint does not provide case-by-case analysis and instead sometimes sweepingly identifies *all* treatment as medically unnecessary. (*See id*.) That, Defendants say, cannot be plausible because it is unlikely that every service billed was medically unnecessary. (*Id.*)

Here, however, Plaintiffs do not present the court with mere statistical analysis. Instead, the Complaint asserts the use of the mails to bill GEICO pursuant to a fraudulent scheme with factual allegations of specific, dated examples for each type of fraudulent activity. Plaintiffs also allege with particularity the use of an improper kickback and referral scheme, exaggerated or predetermined treatment protocols, and violations of licensing and business codes – all aimed at taking advantage of New York's no-fault insurance laws. In a complex RICO suit, this is enough. Although the Complaint sometimes speaks in broad terms, even its widest ranging allegations are followed by details of the alleged activity and identification of the individuals and entities involved. Accordingly, under Rule 9(b), Plaintiffs adequately point to the submitted bills as the fraudulent statements, identify Defendants as the speaker, explain why the bills are allegedly fraudulent, and establish Defendants' fraudulent intent. Consistent with the purpose of Rule 9(b), Defendants are sufficiently on notice as to the nature of the scheme, when it occurred, and who took part. Therefore, the court finds that Plaintiffs have pled

a civil RICO claim predicated on violations of the federal mail statute with sufficient particularity.[4]

### 2.    Establishing a Pattern of Racketeering Activity

A pattern of racketeering activity is defined as "at least two acts of racketeering activity," including any act indictable under 18 U.S.C. § 1341 relating to mail fraud. 18 U.S.C. §§ 1961(1)(B), (5). To establish a pattern, the plaintiff's allegations must meet a "continuity plus relationship" requirement, which is a showing "that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Specifically, a plaintiff "must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time)." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 180 (2d Cir. 2004). To establish open-ended continuity, the court considers the nature of the enterprises and the predicate acts. *See Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999). When an enterprise conducts legitimate business, "there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Id.* at 243. Closed-ended continuity requires activity

---

[4] The court nonetheless observes that statistical analysis may well properly survive a motion to dismiss, and in fact did in Maryland after the *Carefree* complaint was amended to include additional facts. *See State Farm Mut. Auto. Ins. Co. v. Carefree Land Chiropractic*, No. CCB-18-1279, 2020 WL 5526585 at *2, *4 (D. Md. Sept. 15, 2020).

occurring over a minimum of two years and an evaluation of factors, like the number of predicate acts, participants, and victims. *See id.* at 242.

In this case, Defendants argue that because six of the PC Defendants operated for less than a year, the Complaint only demonstrates continuity of enterprise for two of the PC Defendants. (*See* Mot. to Dismiss at 15-16.) This argument fails because the pleading sufficiently establishes open-ended continuity: both past criminal conduct and a threat of future criminal conduct are adequately pled.

First, under *H.J. Inc.*, the predicate acts of mail fraud are sufficiently related to the overall scheme because billing is necessary to further Landow's alleged purpose in establishing the PC Defendants, which is to take advantage of New York's no-fault insurance laws by submitting fraudulent charges. (*See* Compl. ¶¶ 404-05, 424-25, 444-45, 464-65, 484-85, 504-05, 524-25, 544-45.) The court can sufficiently draw an inference from the allegations that the predicate acts reflect how the PC Defendants regularly operated, notwithstanding the idea that some medical procedures were likely legitimate. (*See id.*) Not only does GEICO plead thousands of instances of mail fraud that caused payments of nearly four million dollars, it also pleads the use of a pre-determined treatment protocol that led patients to receive extensive care that was allegedly unnecessary. (*See e.g.*, Compl. ¶¶ 214-226 (alleging that EMG tests, which involve inserting a needle into various muscles to measure electrical activity, were administered in a manner that was not tailored to individual patients and exceeded the maximum number of recommended tests per patient); *id.* ¶¶ 233-253 (alleging that LINT/TPII treatments for muscle pain trigger points are not approved by the Federal Drug Administration and are recommended as a last resort by relevant medical associations).) These allegations sufficiently allege past criminal conduct. Future criminal conduct is adequately pled as

14

well because the continual shuttering and founding of professional corporations implies that the activity will continue. (*See* Compl. ¶ 51.) Therefore, the court finds the continuity requirement is sufficiently pled to establish a pattern of racketeering activity.

### 3.   Injury and Causation

A complaint sufficiently establishes causation by alleging that the RICO violations led to "the proximate cause of. . . injury, meaning there was a direct relationship between the plaintiff's injury and the defendant's injurious conduct" and "the but-for (or transactional) cause of . . . injury, meaning that but for the RICO violation, [the plaintiff] would not have been injured." *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 132 (2d Cir. 2010); *see also Alix*, 23 F.4th at 203.

Defendants argue that Plaintiffs failed to allege an injury because GEICO claims to have paid less than 25% of the bills received, amounting to $3.9 million in payments, while holding $12.75 million in unpaid bills. (*See* Mot. to Dismiss at 14-15.) Defendants further argue that Plaintiffs do not properly identify which defendant caused injury to which specific plaintiff, and instead rely generally on long lists of bills and vague allegations of fraud. (*See id.*) Lastly, Defendants argue that GEICO's reliance on the allegedly fraudulent bills was unreasonable because to the extent that GEICO believes the services are medically unnecessary, it should never have relied on the bills and paid the claims in the first place. (*Id.* at 16-18.) That argument, however, is an odd kind of (alleged) victim-blaming, and the Complaint sufficiently alleges how Plaintiff's justifiable reliance caused injury.

In any event, at the motion to dismiss stage, the court does not evaluate damages – only whether there is an alleged injury. *See Alix*, 23 F.4th at 207 (noting that "uncertainty on how to calculate damages should not be confused with proximate cause because they are distinct concepts"). Here, by claiming that

GEICO has only paid a particular fraction of bills, Defendants essentially ask the court to evaluate damages. But the court is satisfied that even the $3.9 million of insurance claims that have been paid constitute a sufficient injury.

Plaintiffs not only claim with specificity how the alleged scheme caused fraudulent bills to be paid, but also list the dollar amount of each injury, as it pertains to each Defendant. (*See* Compl. ¶¶ 406, 412, 420, 426, 432, 440, 446, 452, 460, 466, 472, 480, 486, 492, 500, 506, 512, 520, 526, 532, 540, 552, 560). The "policy of encouraging quick payments would be harmed if an insurer were unable to recover payments made on fraudulent claims merely because they could not detect the fraud within the statutory thirty-day window." *Allstate Ins. Co. v. Halima*, No. 06-CV-1316 (DLI)(SMG), 2009 WL 750199, at *4 (E.D.N.Y. Mar. 19, 2009); *see also* 11 N.Y.C.R.R., 65-3.8, 3.9. Here, it is reasonable that Plaintiffs were not immediately aware of the fraudulent bills because the insurance claims were allegedly intended to conceal the fraudulent activity. Furthermore, the Complaint does not state that GEICO would *never* pay bills for the types of claims submitted, but rather that the bills submitted by the Defendants were frequently medically unnecessary because of the pre-determined protocol. Given that the Complaint sufficiently alleges an injury to Plaintiffs caused by Defendants, Defendants' motion to dismiss the RICO counts is therefore DENIED.

### B.  The Common Law Fraud

Under New York law, to state a claim for fraud, a plaintiff must demonstrate "(1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015). Additionally, "the stringent requirements of Rule 9(b) may be relaxed . . . in cases involving

complex fraudulent schemes or those occurring over a lengthy period of time and involving thousands of billing documents." *United States ex rel. Mooney v. Americare, Inc.*, No. 06-CV-1806 (FB)(VVP), 2013 WL 1346022, at *3 (E.D.N.Y. Apr. 3, 2013). As noted above, however, a claim cannot be based on mere speculation or conclusory allegations, but must present facts that support "a strong inference of fraud." *Wexner*, 901 F.2d at 172; *see also Alix*, 23 F.4th at 209. Further, in a complex fraud case, to sufficiently put all parties on notice and ensure compliance with Rule 9(b), it is acceptable to name a group of defendants, as opposed to individual speakers, when the statements are tied to official materials. *Loreley Fin. (Jersey)*, 797 F.3d at 171-73.

### 1. Demonstrating the Common Law Fraud Factors

Defendants argue that the Complaint fails to meet the requisite specificity of Rule 9(b) because it does not sufficiently allege a lack of medical necessity, a pre-determined treatment protocol, a kickback scheme, an improper self-referral scheme, the use of independent contractors, or a violation of N.Y. Bus. Corp. Law § 1507. (*See* Mot. to Dismiss at 19.) The court disagrees. At the heart of the Plaintiff's allegations is the contention that the billed-for services submitted by Defendants contain material misrepresentations because they use improper billing codes and stem from the aforementioned fraudulent activity, all of which the Defendants knew to be improper. Plaintiffs allege that the entire purpose in founding the PC Defendants was to take advantage of New York's no-fault laws, or, in other words, to induce insurance companies to rely on their billed-for services. This indicates not only intent to defraud, but also that Defendants knew that they were submitting bills that were allegedly false. Moreover, the court has already found that the Complaint sufficiently illustrates how reliance on the allegedly fraudulent bills caused an injury to GEICO. Accordingly, all five factors are sufficiently pled.

### 2.   Rule 9(b) Specificity

For each fraudulent activity, Defendants assert that the claims are drawn from basic generalized statements. (*See* Mot. to Dismiss at 1, 20-26). The court again disagrees. The alleged underlying schemes and violations are outlined with enough facts to indicate, in line with Rule 9(b)'s specificity requirements, who made the fraudulent statements, where the statements were made, and why they were fraudulent. Regarding the "who," the Complaint is sufficiently tailored to put the Defendants on notice because the bills are official documents sent by the PC Defendants and, as the court found in *Loreley Fin. (Jersey)*, it is acceptable to name the group entity, rather than individual speakers. 797 F.3d at 171-73. The court will address each underlying activity in turn. Because the court has already determined that the lack of medical necessity and pre-determined protocols were sufficiently pled under Rule 9(b) with respect to the RICO violations, the court does not find it necessary to re-address those activities.

### a.   The Alleged Kickback Scheme

Defendants argue that the kickback scheme is not adequately pled because the Complaint does not describe any specific payments, the method of payments, or who received the payments. (*See* Mot. to Dismiss at 19-23.) Plaintiffs respond that since 2016, Landow caused the PC Defendants to engage in the kickback scheme through payments to the John Doe Defendants and that the scheme continued throughout the turnover at the various PC Defendant entities. Although the Complaint does not specify the exact amount of money involved, GEICO alleges enough facts to demonstrate the existence of the kickback scheme. Specifically, Plaintiffs maintain that Landow does not engage in industry-standard business activity, such as advertising the PC Defendants or building a patient base. Instead, Landow causes the PC Defendants to operate out of clinics, and rather than paying fair

market rent, the lease payments are based on the number of pa-
tients. GEICO points to Landow's testimony given in the EUO,
where he acknowledges that after a trial period, lease agree-
ments were made based on the average number of patients the
PC Defendant received. (*See* Compl. ¶¶ 69-72, 79-81.) The Com-
plaint also names a non-exhaustive list of clinics from which the
PC Defendants operate and alleges specific, detailed examples of
how the scheme worked and why this scheme violates New York
laws. (*See id.* ¶ 67.) Therefore, the kickback scheme is sufficiently
pled with requisite particularity.

> b.   *The Self-Referral Scheme*

Similarly, Defendants contend that the referral scheme is insuffi-
ciently alleged because GEICO does not describe referrals as to
each individual patient and because it misrelies on the absence
of documentation to demonstrate the failure to disclose. (*See*
Mot. to Dismiss at 23.) GEICO, however, adequately alleges that
Defendants made self-referrals in violation of N.Y. Pub. Health §
238-d by illustrating a typical scenario of the scheme and provid-
ing ten examples. (*See* Compl. ¶¶ 94-95.) Plaintiffs claim that
neither bills nor documentation show that common ownership
was disclosed to patients. In a vacuum, the court may doubt
whether the Complaint adequately demonstrates improper self-
referrals because it is unclear whether reliance on these bills and
documentation is enough to allege a violation of § 238-d. How-
ever, together with all other instances of sufficiently pled
fraudulent activity, the Complaint nonetheless alleges enough
facts at the motion to dismiss stage to support an inference of
fraud. The court is therefore satisfied that Defendants are ade-
quately on notice about their alleged fraudulent statements
regarding the self-referrals, satisfying Rule 9(b).

        *c.*    *The Allegations of the Use of Independent*
              *Contractors*

Defendants next argue that Plaintiffs improperly allege use of independent contractors because the allegations are vague, unsupported by fact, and improperly inferred from Landow's EUO testimony. (*See* Mot. to Dismiss at 23-24.) First, the court notes that the Complaint does not rely on Landow's EUO testimony alone, but also on facts related to the Defendants' failure to provide employee insurance, unemployment insurance, or workers' compensation; lack of malpractice insurance; and tax forms related to the various Defendants. These alleged facts meet Rule 9(b)'s demands.

        *d.*    *The Violations of New York Business Corporation*
              *Law*

Lastly, Defendants argue that allegations of N.Y. Bus. Corp. Law § 1507 violations are inadequately pled because they are unsupported by Landow's testimony. (*See id.* at 24-26.) However, Plaintiffs sufficiently demonstrate that Landow does not train or oversee employees and is qualified to supervise only some services that the PC Defendants provide. GEICO alleges that Landow has lived fulltime in Florida since 2019 and that he does not have the medical expertise to perform certain treatments, thus rendering any potential supervision he gave inadequate. These facts are enough to infer a violation and put Defendants on notice of the allegation, satisfying Rule 9(b).

        3.   Conclusion

In sum, Plaintiffs allege the underlying schemes and violations with enough requisite specificity to meet 9(b)'s heightened pleading requirements. The alleged specific fraudulent statements, or the bills submitted to GEICO, are properly attributed to Defendants. Further, the underlying activities on which the bills depend are on their own sufficiently pled because they demonstrate why each activity is fraudulent or in violation of a

New York law. Finally, Plaintiffs allege fraudulent intent by claiming that Defendants purposefully aimed their activity to take advantage of New York's no-fault laws. Therefore, all claims pertaining to common law fraud are sufficiently pled. Defendants' motion to dismiss the common law fraud counts is DENIED.

## C.   Declaratory Judgment

Plaintiffs request a judgment declaring that Defendants have no right to receive payment for any currently pending bills because those claims flow from allegedly fraudulent activity. (*See* Compl. ¶¶ 393-400).[5] Defendants move for the court to abstain from deciding the declaratory judgment claim and request that the court exercise its discretion to not entertain the claim. (*See* Mot. to Dismiss at 26-28.)

The Declaratory Judgment Act authorizes a federal court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). To state a claim for a declaratory judgment, "a plaintiff must allege that there is a substantial controversy between parties with adverse legal interests that is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Gov't Emp. Ins. Co. v. AMD Chiropractic, P.C.*, No. 12-CV-4295 (NG)(JO), 2013 WL 5131057, at *7 (E.D.N.Y. Sept. 12, 2013).

---

[5] The court notes that twice in reference to declaratory judgment, the Complaint refers specifically to Paramount, as opposed to all Defendants. (*See* Compl. ¶¶ 400 & p. 128.) Because the Defendants' Motion to Dismiss, the Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss, the Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss (Dkt. 36-5), and the Complaint itself in all other instances refer to Defendants broadly in connection with declaratory judgment, the court construes this cause as against all Defendants.

1.  The Request to Abstain from Hearing the
    Declaratory Judgment Claim

Defendants' motion argues that GEICO improperly requests a declaratory judgment because Plaintiffs seek to avoid adjudication in arbitral and civil court forums. (*See* Mot. to Dismiss at 26.) To that end, Defendants ask the court to abstain from deciding the declaratory judgment question under the *Wilton/Brillhart* abstention doctrine. (*See id.* at 26-27.) Additionally, Defendants contend that N.Y. Ins. Law § 5106 supports arbitration. (*See id.*)

Under the *Wilton/Brillhart* abstention doctrine, "district courts possess significant discretion to dismiss or stay claims over which they have subject matter jurisdiction where solely declaratory relief is sought." *Gov't Emp. Ins. Co. v. Five Boro Psych. Servs., P.C.*, 939 F. Supp. 2d 208, 216 (E.D.N.Y. 2013); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942). However, when a plaintiff seeks both declaratory relief and damages, as in this case, the doctrine does not apply. *See Five Boro Psych. Services, P.C.*, 939 F. Supp. 2d at 216.

Similarly, N.Y. Ins. Law § 5106(b)'s arbitration provision simply does not apply. First, the provision "is limited to disputes that arise from the requirements of subsection (a)," which involves "the prompt payment of [insurance] claims." *Id.* at 214; *see also Allstate Ins. Co. v. Mun*, 751 F.3d 94, 98-99 (2d Cir. 2014). In *Five Boro Psychological Services*, when the plaintiff insurance company's complaint both requested a judgment regarding pending bills and alleged affirmative claims to recover no-fault benefits, the court found that § 5106(b) did not apply to any of the claims. 939 F. Supp. 2d at 215. There, the court reasoned that the insurance company was not required to pay bills predicated on fraud, regardless of whether the bills in question were paid in full, in part, or not at all. *Id.* Similarly, in this case, Plaintiffs allege a combination of affirmative claims to recover paid bills and seek

a judgment that they do not have to pay any pending bills, and all bills in question allegedly stem from fraudulent activity. Thus, § 5106 does not apply because of the variety of claims brought. Second, the purpose of the arbitration mandate is to increase efficiency and speed in cases where discovery is limited or nonexistent. *Mun*, 751 F.3d at 99. Accordingly, "[c]omplex fraud and RICO claims . . . cannot be shoehorned into this system" because discovery is not limited in such cases. *Id.* Therefore, the arbitration provision in § 5106 does not apply.

### 2.   Entertaining a Declaratory Judgment Action

Defendants next argue that the court should decline to hear the declaratory judgment claim because it "fails the test for maintaining a discretionary declaratory judgment action." (Mot. to Dismiss at 28.) The Second Circuit evaluates five factors as to whether to entertain a declaratory judgment action:

(i) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; (ii) whether a judgment would finalize the controversy and offer relief from uncertainty; (iii) whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata'; (iv) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (v) whether there is a better or more effective remedy.

*N.Y. Times Co. v. Gonzales*, 459 F.3d 160, 167 (2d Cir. 2006). Furthermore, "if a court finds that either of the first two factors are satisfied, it must hear the declaratory judgment action." *Windstream Servs., LLC v. BMG Rights Mgmt. (US) LLC*, No. 26-CV-5015 (KMW)(RLE), 2017 WL 1386357, at *5 (S.D.N.Y. Apr. 17, 2017); *see also Started Corp. v. Converse, Inc.*, 84 F.3d 592, 597 (2d Cir. 1996). In addition, "[c]ourts in this district have found it appropriate to enter declaratory judgments where fraudulently incorporated medical services corporations have claims

pending against an insurance company for payment of no-fault benefits." *Gov't Emp. Ins. Co. v. Spectrum Neurology Grp., LLC*, 2016 WL 11395017, at *5 (E.D.N.Y. Feb. 17, 2016); *see also e.g.*, *State Farm Mut. Auto. Ins. Co. v. Jamaica Wellness Med., P.C.*, No. 16-CV-04948 (FB)(SMG), 2019 WL 3330240, at *7 (E.D.N.Y. May 31, 2019) (finding that since the complaint adequately alleged fraud, it also demonstrated an actual controversy); *AMD Chiropractic, P.C.*, 2013 WL 5131057, at *8 (reasoning that the adequacy of the RICO and fraud claims was "a sufficient predicate for declaratory relief").

Defendants argue that the declaratory judgment claim is inadequate because (1) it is overly broad, since it does not rely on an individualized showing of lack of medical necessity and pre-determined treatment protocols; (2) the federal court action is a mere race to res judicata and allowing the claim to move forward would "cause friction" with the arbitration and state court proceedings; (3) it would not resolve disputes with Macintosh, a PC Defendant that is still operational; and (4) this action is designed to chase the Defendants out of individualized arbitration and civil actions, as mandated by N.Y. Ins. Law § 5106, and into more expensive federal litigation instead. (*See* Mot. to Dismiss at 28-30.) The court agrees, however, with Plaintiffs that they have adequately alleged a controversy in which a declaratory judgment is appropriate.

The court has already concluded that Plaintiffs sufficiently pled a scheme of medically unnecessary and pre-determined treatment protocols so as to survive a motion to dismiss. As a result, the argument that overly broad fraud claims warrant dismissal of the declaratory judgment claim is without merit. Moreover, the court notes that approximately 1,000 of the more than 4,000 pending arbitration and state civil court claims were filed after this federal action commenced. (*See* Mot. to Stay at 20, 22.) Consequently, denying the motion to dismiss is not submitting to a race to res

judicata; rather, it permits a claim to move forward that has the potential to both finalize the substantial controversy between the parties and offer relief from uncertainty. If, at a later stage, Plaintiffs lose on their declaratory judgment claim, they will be required to pay any pending bills to all Defendants, including Macintosh, with interest. It is irrelevant whether Macintosh is still an operational facility. Finally, the court has already found that N.Y. Ins. Law § 5106 does not apply in this case. Rather than strong-arming the Defendants into expensive litigation in federal court, as the Defendants claim, this action offers relief from great uncertainty, namely over 4,000 pending arbitration and state civil action claims. Therefore, Defendants' request that the court abstain from deciding the declaratory judgment claim is DENIED.

## IV.  MOTION TO STAY AND ENJOIN UNDERLYING COLLECTION PROCEEDINGS

Plaintiffs move to (1) stay all pending collection arbitrations; (2) stay all current no-fault insurance state court collection lawsuits; and (3) enjoin the Defendants from commencing any additional arbitration or state court collection proceedings – all until the resolution of this federal action. (*See* Mot. to Stay at 1.) Additionally, Plaintiffs request that they be relieved from their obligation to post security for the injunction. (*See id*. at 24.) According to Plaintiffs, over 3,200 arbitration proceedings and 1,160 civil court suits have been filed by the Defendants. (*See id.* at 10.) Furthermore, approximately 1,070 of the civil court collection suits were brought after GEICO filed this federal compliant. (*See id.* at 20.)

To evaluate whether a stay may be granted, courts look toward the preliminary injunction standard: "a movant must demonstrate (1) irreparable harm absent injunctive relief; and (2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor." *Allstate Ins.*

*Co. v. Elzanaty*, 929 F. Supp. 2d 199, 217 (E.D.N.Y. 2013). "The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered." *Id.* at 221 (quoting *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002)).

### A. Motion to Stay the Pending Collection Arbitrations

#### 1. Irreparable Harm

A party seeking a preliminary injunction establishes irreparable harm when "there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Id.* The "harm must be shown to be actual and imminent, not remote or speculative." *Id.* In *Elzanaty*, the court had already exercised its discretion to entertain a request for declaratory judgment. *Id.* Thus, it found that irreparable harm existed because of the concern "with wasting time and resources in an arbitration with awards that might eventually be, at best, inconsistent with this Court's ruling, and at worst, essentially ineffective." *Id.* at 222. Additionally, "[i]rreparable harm occurs where remedies available at law, such as monetary damages, are inadequate to compensate the plaintiff for its injury." *Gov't Emp. Ins. Co. v. Mayzenberg*, No. 17-CV-2802, 2018 WL 6031156, at *5 (E.D.N.Y. Nov. 16, 2018).

Defendants argue that Plaintiff's motion stems from a request for efficiency, rather than irreparable harm, and they rely on the Second Circuit's summary order in *Allstate v. Harvey Family Chiropractic* to argue that the court should deny the motion to stay the pending arbitrations. (Mem. in Opp'n at 10-14 (Dkt. 30-5).) There, the court affirmed a district court's decision to deny a motion to stay pending arbitration claims because there was no

abuse of discretion in the finding that should the plaintiffs succeed in their RICO claims on the merits, then damages would fully and sufficiently compensate them. *Allstate Ins. Co. v. Harvey Family Chiropractic*, 677 F. App'x 716, 718 (2d Cir. 2017) (summary order). However, since that decision, courts in this district have continued to find that an onslaught of arbitration proceedings constitutes irreparable harm. *See e.g., State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215, 233 (E.D.N.Y. 2018) ("Courts have readily held that irreparable harm occurs where, as here, an insurer is required to waste time defending numerous no-fault actions when those same proceedings could be resolved in a single, pending declaratory judgment action."); *see also Gov't Emp. Ins. Co. v. Wellmart RX, Inc.*, 435 F. Supp. 3d 443, 449-51 (E.D.N.Y. 2020); *Gov't Emp. Ins. Co. v. Cean*, No. 19-CV-2363 (PKC)(SMG), 2019 WL 6253804, at *5 (E.D.N.Y. Nov. 22, 2019).

This case is distinguishable from *Harvey Family Chiropractic* because here, many of the PC Defendants are no longer in business – so if GEICO were to win on the RICO claims, treble damages would likely not follow and a remedy at law could be inadequate to compensate GEICO. Moreover, the 3,200 pending arbitration decisions will likely result in a variety of outcomes, which could instead be decided uniformly in the current action. Though the court agrees that inefficiency does not constitute irreparable harm, the pending actions demonstrate a risk of inconsistent judgments, which does. *See, e.g.*, *Gov't Empl. Ins. Co. v. Wallegood, Inc*, No. 21-CV-01986 (PKC)(RLM), at 9-10 (E.D.N.Y. July 16, 2021) (finding that just 70 pending arbitrations were sufficient to meet the irreparable harm standard). Consequently, the 3,200 underlying arbitrations in this case are more than enough to constitute irreparable harm.

Lastly, Defendants argue that the court should not grant the motion to stay the pending arbitrations because bringing the action was not an emergency, as evidenced by the fact that Plaintiffs

started to investigate the fraudulent activity in 2019 but continued to pay bills received after this lawsuit commenced in 2021. (*See* Mem. in Opp'n at 17-19.) This argument is meritless; some time between when a plaintiff first becomes aware of a potential fraudulent scheme and when it files a complaint must be taken to ensure that claims are not erroneous. Similarly, this court has already noted that because GEICO is under an obligation to pay bills in a timely manner, it is likely unavoidable that the insurance company made some payments while still conducting its investigation. In any event, the focus of the court is whether irreparable harm would result should the 3,200 arbitrations proceedings, in which the individual arbitrators would not have the capacity to consider the alleged fraudulent schemes, end inconsistently. Undoubtedly, the answer is yes.

### 2.   Serious Question Going to the Merits

As to the second element of the preliminary injunction standard, "[l]ikelihood of success is not the focus at the early stages of a case such as this, because any likelihood of success inquiry would be premature. Instead, the Court looks to whether there is a serious question going to the merits to make them a fair ground for trial." *Elzanaty*, 929 F. Supp. 2d at 217; *see also Parisien*, 352 F. Supp. 3d at 234. Here, GEICO has shown a serious question going to the merits. The court has already established that the Complaint is sufficiently pled to survive a Motion to Dismiss. In its 131-page Complaint, GEICO alleges, with requisite particularity, the fraudulent scheme to exploit New York's no-fault insurance laws by misrepresenting billing codes, submitting claims for services that were medically unnecessary, billing according to a pre-determined scheme, performing services pursuant to an improper kickback and referral scheme, and violating various New York state licensing laws. (*See* Compl. ¶¶ 1-8; 50-53.) Those allegations show serious questions going to the merits.

3.   Balance of Hardships

Finally, Defendants will not suffer hardship if their right to collect pending bills is adjudicated in a single forum. Rather, "all parties will benefit from having the issue . . . determined in one action." *Elzanaty*, 929 F. Supp. 2d at 222. In *Elzanaty*, the court found that defendants actually benefited from the stay because if the outcome at the district court was in favor of the defendants, they would be entitled to interest. *Id.* Similarly, courts have found that in these types of cases, "the irreparable harm factors . . . tip the equities squarely" in the plaintiff's favor. *Parisien*, 352 F. Supp. 3d at 234. Defendants argue that the equities tip in their favor because they are prevented from recouping payments for services they have already rendered. (*See* Mem. of Opp'n at 25.) However, the court notes that Defendants still must commit time and resources to arbitrate 3,200 proceedings. Thus, all parties benefit from the current action. Therefore, GEICO's motion to stay the pending no-fault arbitrations is GRANTED.

**B.   Stay of the State Civil Court Proceedings**

The All-Writs Act, 28 U.S.C. § 1651, gives a district court the authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Pursuant to this statute, "a federal court may enjoin actions in other jurisdictions that would undermine its ability to reach and resolve the merits of the federal suit before it." *Parisien*, 352 F. Supp. 3d at 224. The court's authority to take this action, however, is limited by the Anti-Injunction Act, 28 U.S.C. § 2283, which provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. But if an injunction falls within one of the three exceptions, a federal court has the authority to grant it. *See Parisien*, 352 F. Supp. 3d at 225. In

*Parisien*, the court acknowledged that "the mere pendency of a parallel proceeding in state court, in and of itself, is insufficient grounds to invoke the exception." *Id.* There, however, the plaintiff would have been forced to defend over 2,300 actions in state civil court without an opportunity to demonstrate fraud in each of them; thus, the court held that because the defendants allegedly acted pursuant to one single scheme, and the federal court had jurisdiction over that scheme, it had the authority to stay the civil court proceedings. *Id.*; *see also e.g.*, *Wallegood, Inc*, No. 21-CV-01986, at 14-19.

Here, Plaintiffs argue that any injunction in this case would fall within the "aid of its jurisdiction" exception because it will "prevent fragmented results[] and avoid a massive drain of judicial resources for all parties involved." (Mot. to Stay at 23-24.) Further, Plaintiffs contend that a single civil court judge would not be able "to fully consider the full contours of [the] fraudulent scheme" and that Defendants pivoted to state court proceedings under the assumption that the arbitration proceedings would be more easily stayed. (*Id.* at 22-24.) Defendants, however, argue that the "in aid of federal jurisdiction" exception applies to *in rem* actions, and therefore should not apply here. (*See* Mem. in Opp'n at 27.)

Defendants correctly assert that "[t]he exception is generally reserved for state court actions *in rem* because the state court's exercise of jurisdiction necessarily impairs, and may defeat, the federal court's jurisdiction over the *res*." *Wyly v. Weiss*, 697 F.3d 131, 137-38 (2d Cir. 2012). Conversely, "an *in personam* action involves a controversy over liability rather than over a possession over a thing" and consequently "does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending." *Id*. at 138. However, the Second Circuit has found a limited exception to this general rule, finding that "injunction of an *in personam* action was justified where the district

court had before it a class action proceeding so far advanced that it was the virtual equivalent of a *res* over which the district judge required full control." *United States v. Schurkman*, 728 F.3d 129, 137 (2d Cir. 2013). The court concluded that the exception applied because of a case's "extraordinary complexity," "multidistrict nature," and because the state proceedings threatened to interfere with the federal case. *Id.* at 138.

Many courts have also become less willing to rely on the *in rem* versus *in personam* distinction as the sole justification for denying an injunction. *See, e.g.*, *Parisien*, 352 F. Supp. 3d at 228. In *Parisien*, the court found that forcing the plaintiff to defend over 2,300 separate actions in state court "without a meaningful opportunity [to] demonstrate the *pattern* of fraud common to all" was sufficient to apply the "aid of jurisdiction" exception. *Id.* at 225; *see also Wallegood*, 21-CV-01986, at 17 (rejecting the argument that plaintiff's request for a stay "should be denied solely because this is an *in personam*, rather than *in rem*, action.")

In this case, the court is persuaded that the exception to the general rule applies. The defendants face over 1,000 pending state actions, all of which are connected to the federal action, and none of which would be fully evaluated in state court as to the fraud allegations. Furthermore, although it may be appropriate to deny an injunction when the state court's judgment could "peaceably coexist with the district court's judgment," *Schurkman*, 728 F.3d at 139, here, the state court actions have the potential to conflict with the declaratory judgment. Plaintiff's motion to stay state civil court proceedings is therefore GRANTED.

### C.   Injunction Against the Commencement of New No-Fault Proceedings

Plaintiffs move the court to enjoin the Defendants from initiating any new no-fault collection arbitration and state court proceedings. (*See* Mot. to Stay at 20.) GEICO points out that since it

initiated this action, Defendants filed approximately 1,070 new civil court suits, nearly all on a single day. (*See id.*) Federal Rule of Civil Procedure 13(a) requires that when a claim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," it must be stated as a counterclaim. Fed. R. Civ. P. 13(a). Here, the Defendants did not adhere to this rule when they filed 1,070 new state court suits after the commencement of this federal action, indicating the possibility of continued violations. Furthermore, the Anti-Injunction Act "does not prevent federal courts from enjoining proceedings in state courts that have not yet been filed." *Mayzenberg*, 2018 WL 6031156, at *9 (finding that it is "in the interests of judicial economy to resolve the controversy in a single action, rather than require the parties and the lower courts to engage in piecemeal and repetitive litigation.") Similarly here, the court finds it in the parties' interests to enjoin the commencement of arbitration and state proceedings. By evaluating the declaratory judgment claims and defenses, this court is empowered to determine an outcome that is relevant to any future collections proceedings, both in arbitration and in civil court. The court therefore GRANTS GEICO's motion to enjoin the commencement of new no-fault proceedings.

### D.   Obligation to Post Security

Plaintiffs finally request that the court exercise its discretion to waive the security requirement of Federal Rule of Civil Procedure 65(c). (*See* Mot. to Stay at 24.) Under Rule 65, "the court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). An exception to this rule has been "crafted for cases involving the enforcement of public interests arising out of comprehensive federal health and welfare statutes." *Wellmart*

*RX, Inc.*, 435 F. Supp. 3d at 456. To determine whether a claim involves the enforcement of public interests, the court evaluates "the nature of the rights being enforced, rather than the nature of the entity enforcing them." *Pharm. Soc'y of State of N.Y., Inc. v. N.Y. State Dep't of Soc. Servs.*, 50 F.3d 1168, 1175 (2d Cir. 1995). Moreover, "a district court has wide discretion to dispense with the bond requirement where there has been no proof of likelihood of harm." *Wellmart RX, Inc.*, 435 F. Supp. 3d at 456.

 Courts have repeatedly found that New York's no-fault laws are "designed to protect accident victims regardless of fault by enabling them to obtain necessary medical attention without concern of the ability to pay," and thus claims of fraud pertaining to these laws involve the enforcement of public interests. *Mayzenberg*, 2018 WL 6031156, at *10; *see also Wellmart RX, Inc.*, 435 F. Supp. 3d at 456; *Wallegood*, 21-CV-01986, at 20. Although no federal health or welfare statute is applicable, "[p]reventing fraud on our health care system is also in the public's interest." *Mayzenberg*, 2018 WL 6031156, at *10. Here, GEICO alleges a fraudulent scheme for the purpose of taking advantage of New York's no-fault laws, which the court concludes falls squarely within the public interest exception. Furthermore, Defendants have not demonstrated that they will be harmed by granting Plaintiff's motion to waive the security requirement. Therefore, the court GRANTS Plaintiff's motion to do so.

## V.   CONCLUSION

The court concludes that Plaintiffs' request for a preliminary injunction is justifiable and necessary for the resolution of this action. Therefore, plaintiffs' motion to stay all arbitration and state civil court proceedings is GRANTED. Any such future proceedings are ENJOINED. The obligation to post security is WAIVED.

The court further concludes that Plaintiffs' civil RICO and common law fraud claims have been adequately pled.[6] Defendants' motion to dismiss for failure to state a claim is therefore DENIED in its entirety. Defendants' motion for the court to abstain from hearing the declaratory judgment claim is also DENIED. The parties are DIRECTED to contact Magistrate Judge Ramon E. Reyes, Jr., to proceed to discovery.


SO ORDERED.


Dated:      Brooklyn, New York
            March 29, 2022

                                          s/Nicholas G. Garaufis
                                          _____
                                          NICHOLAS G. GARAUFIS
                                          United States District Judge

---

[6] Defendants made occasional mention of Plaintiffs' unjust enrichment claims, but never moved to dismiss them.