UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO INDEMNITY COMPANY, GEICO
GENERAL INSURANCE COMPANY, and GEICO    Docket No.: 1:21-cv-01440
CASUALTY COMPANY,    (NGG)(RER)

                Plaintiffs,

    -against-

JONATHAN LANDOW, M.D.,
PARAMOUNT MEDICAL SERVICES, P.C.,
PREFERRED MEDICAL, P.C.,
SOVEREIGN MEDICAL SERVICES, P.C.,
BIRCH MEDICAL & DIAGNOSTIC, P.C.,
SPRUCE MEDICAL & DIAGNOSTIC, P.C.,
SUMMIT MEDICAL SERVICES, P.C.,
EASTERN MEDICAL PRACTICE, P.C.,
MACINTOSH MEDICAL, P.C.,
and JOHN DOE DEFENDANTS "1-10",

                Defendants.
------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO COMPEL

RIVKIN RADLER LLP
Barry I. Levy, Esq.
Michael A. Sirignano, Esq.
Priscilla D. Kam, Esq.
926 RXR Plaza
Uniondale, New York 11556-0926
RR File: 5100-3189
Telephone: (516) 357-3000

*Counsel for Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company and GEICO Casualty Company*

Dated: May 19, 2022
       Uniondale, New York

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................1

I.     Internal Claims Manual and Contracts With Peer Review or IME Providers .....................2

II.    GEICO's "Objective Standards" for Use of EUOs............................................................5

III.   GEICO's Correspondence With Any Outside Entity In
Connection with EUOs or Its Investigation, Including Legal Counsel ...............................8

CONCLUSION..................................................................................................................10

# TABLE OF AUTHORITIES

                                                                                                                    **Page(s)**

**Cases**

Aetna Health Plans v. Hanover Ins. Co.,
    27 N.Y.3d 577 (N.Y. 2016) (Stein, J. concurring)..................................................................3

Cement & Concrete Workers Dist. Council Pension Fund v. Ulico Cas. Co.,
    387 F. Supp. 2d 175 (E.D.NY. 2005) .......................................................................................4

Champion Int'l Corp. v. Liberty Mut. Ins. Co.,
    129 F.R.D. 63 (S.D.N.Y. 1989) .................................................................................................3

Gov't Emples. Ins. Co., et al. v. Lenex Services, Inc., et al.,
    Docket No.: 1:16-cv-06030(LDH)(JO) ...................................................................................6

Gov't Emples. Ins. Co. v. Gateva,
    2014 U.S. Dist. LEXIS 44878 (E.D.N.Y 2014).......................................................................3

Gov't Emples. Ins. Co. v. Lexington Med. Diagnostic Servs. P.C.,
    2020 U.S. Dist. LEXIS 35790 (E.D.N.Y 2020)........................................................................3

Kemper Independence Ins. Co. v. Accurate Monitoring, LLC,
    73 Misc. 3d 585 (Sup. Ct. NY Cty 2021) ..............................................................................6,7

Safeco Ins. Co. of Am. v. M.E.S., Inc.,
    289 F.R.D. 41 (E.D.N.Y. 2011) ................................................................................................3

State Farm v. 21st Century Pharmacy, Inc.,
    17-cv-5845 (E.D.N.Y. 2020), Docket No. 239....................................................................9, 10

State Farm v. Eastern Medical PC,
    2008 U.S. Dist. LEXIS 59891 (E.D.N.Y. 2008)...................................................................8,9

State Farm Mutual Automobile Insurance Company v. Liguori M.D., P.C.,
    2:08-cv-00967 (JFB)(WDW)....................................................................................................4

**Statutes**

Insurance Law §409....................................................................................................................6, 9

11 N.Y.C.R.R. § 65-1.1(d).............................................................................................................5

11 N.Y.C.R.R. § 65-3.5 .................................................................................................................3

11 NYCRR § 65-3.5(e) ........................................................................................................2, 5

11 N.Y.C.R.R. § 65-3.8 ..........................................................................................................3

**Other Authorities**

N.Y. Insurance GC Opinions LEXIS 311 (Oct. 15, 2002) ....................................................6

New York Department of Insurance General Counsel Opinions,
    Opinion No. 02-10-14 .....................................................................................................6

# PRELIMINARY STATEMENT

Plaintiffs ("Plaintiffs" or "GEICO") respectfully submit this opposition to the motion to compel filed March 28, 2022 by Defendants Jonathan Landow, M.D. ("Landow") and his eight professional corporations (collectively the "PC Defendants)(together with Landow, the "Defendants"). As discussed in detail below, Defendants' motion, as further illuminated by their Supplemental Memorandum of Law filed April 15, 2022, seeks irrelevant materials and/or materials protected by privilege, and plainly has no purpose other than to divert attention from Defendants' own fraudulent conduct. See Docket No. 45 and 53.

Tellingly, Defendants' motion offers little explanation of the purported relevance of the documents sought as to the claims or defenses in this case, beyond generalized statements that the documents will "assist Defendants" and vague references to "reliance." GEICO already produced relevant, non-privileged/protected materials relating to its investigation of the Defendants as well as the No-fault Claims Files ("Claims Files") containing all documents for the claims submitted by Landow and the PC Defendants that GEICO has alleged to be fraudulent. The materials produced by GEICO also include documents relating to the examinations under oath ("EUOs") that GEICO conducted of the PC Defendants as part of the standard regulatory claim review process authorized by the No-fault regulations. Defendants now seek generalized claims-handling documents, contracts with outside vendors, and general standards underlying EUOs, along with a generalized ruling that <u>all</u> communications relating to EUOs and GEICO's investigation are discoverable regardless of any privileges or protections. Defendants' positions have no support in the law.

Specifically, as set forth in Defendants' Supplemental Memorandum, Defendants seek the five categories of documents: (1) internal claims manual or other policies, practices or procedures used to evaluate NY No-fault claims; (2) contracts and agreements with any provider of peer reviews and/or Independent Medical Examinations ("IMEs") who reviewed claims; (3) "objective

standards" for use of EUOs (as defined in 11 NYCRR 65-3.5(e)); (4) correspondence with any outside entity hired by GEICO (including legal counsel) to perform investigations or EUOs related to any patient treated by the PC Defendants; and (5) documents prepared by GEICO employees which reference correspondence or communication with any outside entity (including legal counsel) hired by GEICO to perform EUOs or investigations of any of the PC Defendants' patients.

I. **Internal Claims Manual and Contracts With Peer Review or IME Providers**

Defendants' motion to compel the first two categories of documents – (1) "internal claims manual or other policies…used by GEICO to evaluate NY No-fault claims" and (2) contracts and agreements with any provider of peer reviews and/or IMEs – is a fishing expedition intended to divert attention away from Defendants' own fraudulent conduct.

Defendants do not articulate a genuine basis for asserting the relevance and proportionality of this information to the claims in this case. To the extent Defendants are trying to show that GEICO acted inconsistent with internal general claims handling procedures, or inconsistent with third-party vendor contracts, that is simply not relevant to any claims or defenses in this case. Indeed, neither GEICO's state of mind nor the completeness of its claims handling practices is relevant to determining whether Defendants engaged in the fraud alleged in GEICO's Complaint.

To the extent Defendants vaguely contend that GEICO's internal claims handling manual is relevant to the issue of reliance underlying GEICO's fraud claims, Defendants do not explain how the information is relevant to (as they presumably hope) defeat GEICO's reliance on the PC Defendants' fraudulent bills. Defendants, in fact, fail to note that they already have the documents showing what was actually done by GEICO in connection with each bill submitted by each PC Defendant for each GEICO insured. Specifically, GEICO already produced a large volume of complete Claims Files regarding the claims submitted by the eight PC Defendants and has offered to make any remaining files available to Defendants. These files disclose how each of the individual

claims/bills submitted to GEICO were handled and provides all relevant information regarding each of the insureds who were allegedly treated by the PC Defendants. The Claims Files also contain the actual peer review or IME reports, to the extent one was performed as to a particular claim.

Defendants also ignore the fact that New York's No-fault statutory scheme sets strict time limits for the payment, or non-payment, of bills for medical services. See generally 11 N.Y.C.R.R. §§ 65-3.5, 65-3.8; Aetna Health Plans v. Hanover Ins. Co., 27 N.Y.3d 577, 583 (N.Y. 2016) (Stein, J. concurring) (describing the no-fault statutory scheme crafted by the State legislature as "tightly regulated"). Given the tightly regulated statutory scheme that GEICO is required to follow, Defendants' requests for GEICO's internal general claims manuals and third-party vendor contracts regarding peer review and IME services is nothing more than an impermissible fishing expedition – particularly since the law is clear that insurers may justifiably rely on facially valid claims forms submitted under New York's No-fault laws.[1]

In support of Defendants' request for GEICO's "Claims Manual" and third-party vendor contracts, Defendants tellingly cite no decision from any No-fault fraud case. Instead, Defendants cite three cases having absolutely nothing to do with claims or defenses involving No-fault fraud. First, in Safeco Ins. Co. of Am. v. M.E.S., Inc., 289 F.R.D. 41, 52 (E.D.N.Y. 2011), the court made clear that, in a case involving indemnity contracts, the claims manual was relevant to the "defendants' claim that Safeco acted in bad faith." While bad faith may be a defense to a contract claim, it is not a defense to GEICO's fraud claims in this case. Second, in Champion Int'l Corp. v. Liberty Mut. Ins. Co., 129 F.R.D. 63, 67-68 (S.D.N.Y. 1989) the plaintiffs sought indemnification from Liberty Mutual under Comprehensive General Liability policies and sought extrinsic evidence (including claims manuals), which the court found was "germane to the interpretation of such

---

[1] See e.g., Gov't Emples. Ins. Co. v. Gateva, 2014 U.S. Dist. LEXIS 44878 at *12 (E.D.N.Y 2014); Gov't Emples. Ins. Co. v. Lexington Med. Diagnostic Servs., P.C., 2020 U.S. Dist. LEXIS 35790 *15-16 (E.D.N.Y 2020).

3

policies." Third, Cement & Concrete Workers Dist. Council Pension Fund v. Ulico Cas. Co., 387 F. Supp. 2d 175, 182 (E.D.NY. 2005) involved another indemnity case and insurance coverage dispute where the court noted that the "usual practice…appear[s] to be to allow documents pertaining to drafting history to be discovered in coverage disputes" but since none of the policy terms were ambiguous, the documents were not essential and the "extrinsic information could not have been included in [the court's] consideration of the policy's meaning."

At least one court in the No-fault fraud context has rejected inquiries into general claims practices as not relevant. See State Farm v. Liguori M.D., P.C., et al., Dkt. No. 2:08-cv-00967 (JFB)(WDW) at ECF No. 56 (Defendants' letter motion requesting a ruling on, among other things, permissibility of a 30(b)(6) topic entitled, "The practices and procedures of State Farm concerning the processing, handling, and payment of no-fault claims"); ECF No. 57 (Plaintiffs' letter opposition to Defendants' motion); ECF No. 63 (Order, *inter alia*, denying Defendants' motion).

In sum, Defendants know very well that there are strict regulatory time limits for the payment, or non-payment, of bills for medical services under the No-fault law and regulations. The Defendants also have access to every Claim File, relating to every insured who allegedly received services from the PC Defendants, showing the entirety of the actual claims-handling process for each claim. Further, it should be noted that Defendants served non-party subpoenas seeking depositions and documents on (i) 22 healthcare providers who purportedly conducted peer reviews or IMEs in connection with the claims submitted by the PC Defendants to GEICO and (ii) the third-party peer review and IME vendor companies. Defendants are also seeking depositions of GEICO employees and former employees which will afford Defendants the opportunity to seek testimony with regard to the actual claims handling of the PC Defendants' claims and GEICO's investigation

of the Defendants. There simply is no basis to obtain GEICO's written, generalized Claims Manuals or contracts/vendor agreements with any IME or peer review provider companies.

## II. GEICO's "Objective Standards" for Use of EUOs

Defendants' third category of documents seek "objective standards" for use of EUOs. Here, GEICO conducted various EUOs of the PC Defendants pursuant to the No-fault regulations as part of the claims submission process. Plaintiffs accordingly produced in discovery copies of the transcripts and non-privileged/protected portions of its SIU files and the Claims Files providing all relevant information regarding how each claim was handled in connection to the EUOs.

The EUOs of the PC Defendants were conducted pursuant to the prescribed No-fault policy endorsement in New York, 11 N.Y.C.R.R. § 65-1.1(d), which explicitly states that insurers may reasonably require healthcare providers that take an assignment of benefits from an eligible injured person to submit to an EUO by any person named by the insurer. Plaintiffs produced all relevant and non-privileged, non-protected documents regarding GEICO's conducting of the EUOs – authorized by regulation – and Defendants plainly understand the legal authority for the EUOs. Defendants also have all relevant information relating to the actual EUOs of the PC Defendants and what actually transpired from the initial request to completion of the EUO testimony. Beyond that information, discovery into general "objective standards" used to request EUOs authorized by the law has no bearing on this fraud action – and is likely sought only for the irrelevant purpose of trying to show GEICO deviated from general standards.

Notably, Defendant's initial motion referenced "objective standards" as defined in 11 NYCRR § 65-3.5(e), but Defendants' supplemental submission dropped the reference to the No-fault regulations – no doubt, because the regulations make clear that the "[i]nsurer's standards [when requesting an EUO] shall be available *for review by department examiners*." Id. (Emphasis added.) These objective standards are not open to review by providers under the No-fault law and

regulations. See New York Department of Insurance General Counsel Opinions, Opinion No. 02-10-14, 2002 N.Y. Insurance GC Opinions LEXIS 311 (Oct. 15, 2002).[2]

Beyond the undisputed fact that GEICO's objective standards for EUOs are not subject to review by providers, like Defendants, these standards have no relevance to any claims or defenses in this fraud action. Tellingly, virtually the same documents were sought by the defendants in another No-fault fraud litigation, entitled Gov't Emples. Ins. Co., et al. v. Lenex Services, Inc., et al., Docket No.: 1:16-cv-06030(LDH)(JO). In the Lenex case, the defendants moved to compel "GEICO's SIU EUO Protocols," "GEICO's SIU Audit Guides," and "GEICO's SIU Standard Operating Procedures." See Docket No.107 (motion); Docket No. 109 (opposition), and Docket No. 113 (minute entry order). GEICO's opposition stated, among other things, that the defendants' speculation of deviation from "objective standards" and "operating guidelines" has nothing to do with the fraud at issue. See Docket No. 109. Magistrate Judge Orenstein agreed and denied the defendants' motion to compel in its entirety. See Minute Entry, Docket No. 113.

Defendants' citation to a single state supreme court case, Kemper Independence Ins. Co. v. Accurate Monitoring, LLC, 73 Misc. 3d 585 (Sup. Ct. NY Cty 2021), is inapposite and unpersuasive. That case discusses the individual claims review process and the question of whether an EUO scheduling notice must disclose the insurer's justification for the EUO of particular claims after that justification has been requested by the claimant. Id. at 589-590. The court in Accurate Monitoring made the specific distinction between the broader "objective standards established by the insurer regarding when to request EUOs" and what it called "limited disclosure of the specific

---

[2] It bears noting that New York insurers are under the scrutiny of the NYS Department of Financial Services (formerly the NYS Department of Insurance) and have statutory and regulatory obligations to file fraud prevention plans, including provisions for special investigation units and for the investigation of and initiation of civil actions based on information received by the special investigation units. See NYS Ins. §409. "Any plan, the information contained therein, or correspondence related thereto, or any other information furnished pursuant to this section shall be deemed to be a confidential communication and shall not be open for review or be subject to a subpoena except by a court order or by request from any law enforcement agency or authority" Id., §409(e).

facts that applied in "a given case." Id. at 590. "The former [objective standards] is materially more intrusive, and more likely to provide a guide to no-fault fraudsters on how to evade insurer scrutiny and detection." Id. In short, Accurate Monitoring in no way supports Defendants' request for the materially more intrusive "objective standards" used by GEICO for EUOs.

In sum, Defendants already have the "specific facts that applied in a given case" as stated in Accurate Monitoring. The more intrusive "objective standards" – are confidential and, even further, not relevant to the issues of reliance or to anything else vaguely argued in Defendants' supplemental submission.

Finally, although not discussed in their supplemental submission, GEICO notes that Defendants recently filed two counterclaims for purported violations of the No-fault regulations. See Docket No. 50. These counterclaims make clear Defendants' true intentions with respect its motion to compel – that is, to try and accuse GEICO of acting inconsistent with internal general claims handling procedures or regulatory "objective standards" for EUOs. But as set forth in detail in Plaintiffs' letter brief in support of a pre-motion conference in advance of a motion to dismiss the counterclaims, New York State does not recognize a private cause of action based on alleged violations of insurance regulations. See Docket No. 55. Whether in the No-fault insurance context or in connection with other general insurance unfair claims practices statutes, the law is clear that superintendent of insurance is charged by law with regulation of the insurance industry, not Landow or other private litigants. Id.

At bottom, Defendants' request for discovery of "objective standards" regarding EUOs seeks information not relevant to any claims or defenses in this case – and is an improper subject for a request for discovery by a private litigant as a matter of law.

## III. GEICO's Correspondence With Any Outside Entity In Connection with EUOs or Its Investigation, Including Legal Counsel

Defendants' fourth and fifth categories of documents demand correspondence between GEICO and any outside entity (including but not limited to legal counsel) hired by GEICO to perform investigations or EUOs related to any patient treated by the PC Defendants; and documents prepared by GEICO employees which reference correspondence or communication with any outside entity (including but not limited to legal counsel) hired by GEICO to perform EUOs or investigations of any of the PC Defendants' patients.

Defendants' requests broadly assert that every document that "references" any communication with any outside entity regarding GEICO's performance of the EUOs or its investigation of any of the PC Defendants should be produced – without any consideration of privilege or protection. Defendants' requests for documents which "reference" other documents are overbroad, seek irrelevant materials, and are not proportional to the needs of the case. Moreover, there is no basis for Defendants to request the Court issue a general ruling that all communications of anyone which may "reference" the EUOs or investigation, including communications of legal counsel, are discoverable *en masse*. Defendants are simply wrong on the law.

GEICO has already produced the non-privileged/protected portions of its SIU files relating to Landow and the PC Defendants, along with a privilege log identifying particular documents withheld as privileged or protected. Defendants offer no challenge to any particular document and instead seek an overbroad, general ruling from the Court that essentially everything connected to an insurer's investigation must be produced without any individual consideration of the documents.

Defendants once again misread case law, in particular <u>State Farm v. Eastern Medical PC</u>, 2008 U.S. Dist. LEXIS 59891 (E.D.N.Y. 2008). In <u>Eastern Medical</u>, State Farm took the position that its entire SIU file was confidential based on the confidentiality provisions of Insurance Law

§409 and was otherwise protected by attorney-client privilege and work-product doctrine.[3] Magistrate Judge Levy disagreed. Although Judge Levy noted that the attorney client privilege is not "unfettered" he specifically ruled that "[a]fter weighing…competing tensions, the court order[s] plaintiffs to produce for defendants the contents of the SIU files relating to this case, except for any information that reveals 1) the structure or methodology of plaintiffs' fraud detection plan created pursuant to §409 and 2) materials protected by attorney-client and work-product privileges." Id., at 17. That is what GEICO produced here.

Similar issues were raised in State Farm v. 21st Century Pharmacy, Inc., 17-cv-5845 (E.D.N.Y. 2020), Docket No. 239. There, the defendants initially contended that State Farm could not assert privilege or protection over any documents related to State Farm's verification and investigation efforts connected to the individual claims submitted by 21st Century Pharmacy, allegedly because payment or rejection of claims was part of the insurer's regular course of business, as is the factual investigation of a claim. Id., at 2-3. Magistrate Judge Scanlon, in addition to denying the defendants' motion to disqualify State Farm's law firm because it participated in State Farm's verification efforts (*i.e.,* conducted EUOs), denied, and granted, in limited part the defendants' motion to compel.

Judge Scanlon rejected the defendants' attempt in 21st Century Pharmacy, Inc. to obtain a generalized ruling – similar to the one sought by Defendants – that no privilege or protection applies to communications whatsoever simply because the communications relate to investigations or EUOs of the defendant provider. Id.

As to the work product privilege, the Court noted that documents created in the ordinary course of an insurer's business are not protected by the work-product privilege, but that "[t]here may

---

[3] See footnote 2, infra as to Ins. Law. §409.

9

come a point when an insurance company's activities shift from the regular and ordinary course of business to [']anticipation of litigation['\]." Id. at 2-3. Magistrate Scanlon then found that the "majority of the documents reviewed pertained to and/or aggregated information regarding multiple claims that had been submitted by numerous claimants" and were appropriately designated and withheld, as, *inter alia*, attorney-work product." Id. at 4.

As to the attorney-client privilege, Magistrate Scanlon found that "most documents were withheld appropriately with the exception of summary reports of examinations under oath of underlying claimants." Id. at 6. The Court stated further that "[w]here the content of the reports provides attorney opinions, recommendations or impressions that are primarily of a legal character – not merely recitations or summaries of the testimony elicited under oath – they may be redacted on the grounds of attorney-client privilege." Id. at 6-7.

In sum, there is no basis for Defendants' motion to compel, *en masse*, all communications with counsel and anyone else connected to an insurer's investigation or the conducting of EUOs pursuant to the No-fault regulations. Granting Defendants' motion – which seeks a wholesale, generalized ruling – is contrary to all relevant case law and would eviscerate the privileges and protections themselves.[4]

## CONCLUSION

Respectfully, Defendants' motion to compel should be denied in its entirety, together with such other and further relief as to the Court may seem just and proper.

---

[4] To the extent that Defendants have a concern about particular documents identified on Plaintiffs' privilege log, GEICO is prepared to review the documents and meet and confer with Defendants to discuss production of documents/information that may be purely factual in nature, even though incorporated into GEICO's Special Investigation File and withheld as material prepared in anticipation of litigation, subject to an understanding that Plaintiffs are not universally waiving all protections and privileges. To the extent Defendants' motion goes beyond that, the motion to compel all SIU records and communications *of any sort* has no merit and should be denied.

Dated: May 19, 2022,
Uniondale, New York

                                      RIVKIN RADLER LLP

                              By:   /s/ *Michael A. Sirignano*
                                      Barry I. Levy, Esq.
                                      Michael A. Sirignano, Esq.
                                      Priscilla Kam, Esq.