UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
─────────────────────────────
GOVERNMENT EMPLOYEES INSURANC
ECOMPANY, GEICO INDEMNITY COMPANY,
GEICO GENERLA INSURANCE COMPANY, and
GEICO CASUALTY COMPANY,

                  Plaintiffs,

    -against-

JONATHAN LANDOW M.D., PARAMOUNT
MEDICAL SERVICES, P.C., BIRCH MEDICAL &
DIANOSTIC, P.C., SPRUCE MEDICAL &
DIAGNOSTIC, P.C., SUMMIT MEDICAL
SERVICES, P.C., EASTERN MEDICAL
PRACTICE, P.C., MACINTOSH MEDICAL, P.C.,
AND JOHN DOES DEFENDANTS "1-10",

                  Defendants.
─────────────────────────────

**MEMORANDUM & ORDER**
**21-CV-1440 (NGG) (RER)**

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court is Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company's (together "GEICO" or "Plaintiffs") Motion to Dismiss the Counterclaims set forth by certain defendants in their Amended Answer to the Complaint. In this action, Plaintiffs allege that the defendants perpetrated a scheme that defrauded GEICO in violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO," 18 U.S.C. § 1962(c)) by submitting thousands of fraudulent bills for no-fault insurance charges, as well as common law fraud and unjust enrichment. (*See* Compl. ¶¶ 393-571.) The counterclaims addressed by this motion to dismiss were brought by Defendants Paramount Medical Services, P.C., Preferred Medical, P.C., Sovereign Medical Services, P.C., Birch Medical & Diagnostic, P.C., Spruce Medical Diagnostic, P.C., Summit Medical Services, P.C.,

1

Eastern Medical Practice, P.C., and Macintosh Medical, P.C. (together "PC Defendants," "Defendants," or "Defendant-Counterclaimants"). Plaintiffs move to dismiss Defendants' counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis that (1) there is no private cause of action for alleged violations of the New York state insurance regulations at issue, and (2) the Defendants fail to meet the *Twombly* and *Iqbal* pleading standards. (*See* Mot. at 5, 8.)

## I. BACKGROUND

The court assumes familiarity with the factual and procedural background of this case, which is set forth in greater detail in the court's prior opinion, and includes information only to the extent that it is relevant to the resolution of this motion. *See Gov't Emps. Ins. Co. v. Landow*, No. 21-CV-1440 (NGG) (RER), 2022 WL 939717 (E.D.N.Y. Mar. 29, 2022).

### A. Factual History

For the purposes of this motion, the court accepts all factual allegations set forth by the PC Defendants in the counterclaim portion of their Answer as true. (*See* Ans. ¶¶ 584-636.)

The PC Defendants are all medical professional corporations licensed to practice medicine in the State of New York who "treat patients based on the patients' representation that they have been injured in motor vehicle accidents" that are covered by N.Y.S. Ins. Law § 5101, et seq (the "NY Insurance Law"). (Ans. ¶¶ 584-86.) The NY Insurance Law provides for the payment of medical professional corporations such as the PC Defendants, requiring that car insurance carriers make payment for losses arising out of the use or operation of a motor vehicle in New York. (*Id.* ¶ 587.) The law also requires that those benefits be paid "as the loss is incurred" and designates those benefits as "overdue if not paid within thirty days after the claimant supplies proof of the fact and amount of loss sustained." (*Id.* ¶ 588.)

Regulations were promulgated by the New York State Department of Insurance [1] to implement the provisions of the NY Insurance Law and include "claim practices principles" such as the "basic goal [is] the prompt and fair payment to all automobile accident victims." (*Id.* ¶ 589-90). Two specific provisions of the claim practices principles are at issue in the PC Defendants' first counterclaim: (1) the requirement, set forth in 11 N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") § 65-3.2(b) that "insurance carriers [] assist the applicant in the processing of a claim," and "not treat the applicant as an adversary," and (2) the statement in 11 N.Y.C.R.R. § 65-3.2(c) advising insurance carriers not to "demand verification of facts unless there are good reasons to do so." (*Id.* ¶¶ 591-92). The PC Defendants allege that GEICO has "been often found to violate these principles" and lists "dozens" of determinations by AAA arbitrators that have found "that GEICO's [examination under oath ("EUO")] demands and Post-EUO verification requests are improper within the context of the claims verification process." (*Id.* ¶¶ 593-94).

To that end, the PC Defendants allege that GEICO treats "each and every medical provider" who submits a claim as an adversary and demand significant, burdensome verification of each and every claim submitted by a medical provider, in violation of the NY Insurance Law and corresponding regulations. (*Id.* ¶¶ 596-97). The PC Defendants further allege a "plan" and "policy" pursued by GEICO over several years, to "coerce medical providers to walk away from their receivables" through a combination of verification of claim requests made only for pretextual reasons, preparing investigative files on each and every medical provider by making excessive and oppressive verification requests and initiating affirmative litigation. (*Id.* ¶¶ 598-608).

---

[1] The court notes that today the responsibility for implementation and enforcement of this statute and the corresponding regulations lies with the Department of Financial Services or "DFS."

In their second counterclaim, the PC Defendants also allege that Plaintiffs have subjected them to "countless EUOs" while failing to maintain objective standards for their use of EUO requests, effectively using these EUO requests as (1) "a means to create an artificial delay of [the PC Defendants] statutory time to determine claims," (*id.* ¶¶ 620, 627), (2) a mechanism for creating investigative files on each and every medical provider submitting claims (*id.* ¶¶ 621, 628), (3) "a means to intimidate" the PC Defendants, (*id.* ¶¶ 622, 629), and (4) a means to prepare affirmative litigation and coerce the PC Defendants into walking away from outstanding and future claims, (*id.* ¶¶ 620, 624, 630), all in violation of 11 N.Y.C.R.R. § 65-3.5(e)'s requirement that they make EUO requests based on "the application of objective standards [so] that there is a specific objective justification supporting the use of such examination," (*id.* ¶ 617.)

The PC Defendants also appear to allege that all of GEICO's practices detailed above are pursuant to a GEICO policy of doing this to *all* medical providers that submit a number of claims above a certain threshold. (*Id.* ¶¶ 596-608.)

## II. STANDARD OF REVIEW

When the court reviews a motion to dismiss for failure to state a counterclaim pursuant to Rule 12(b)(6), the court accepts as true all allegations of fact made by the non-moving party and "construe[s] the answer and counterclaims in the light most favorable to the nonmoving party." *Phoenix Cos. v. Concentrix Ins. Admin. Sol. Corp.*, 554 F. Supp. 3d 568, 585 (S.D.N.Y. 2021); *see also ATSI Commc'ns., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

"[A] . . . counterclaim, like all pleadings, must conform to the pleading requirements of *Twombly* and *Iqbal*." *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 99 (2d Cir. 2019). A court will dismiss a claim if it does not "contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While plaintiffs (and counterclaimants) are not required to put forward "detailed factual allegations," a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. And "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996)

### III. DISCUSSION

#### A. *Twombly* and *Iqbal* pleading standards

The PC Defendants' counterclaims are almost entirely devoid of factual allegations. Indeed, they consist of recitations of regulatory requirements and corresponding statements that GEICO has violated those requirements. Thus, the counterclaims do not meet the minimum requirements of a well-pleaded complaint. Fed. R. Civ. P. 12(b)(6). The PC Defendants provide only "conclusory statements lacking factual explanation or support." *Gov't Emps. Ins. Co. v. Cean*, No. 19-CV-2363 (PKC) (SMG), 2019 WL 6253804, at *4 (E.D.N.Y. Nov. 22, 2019). *Cf. Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

The PC Defendants' first counterclaim alleges that GEICO has been "often found to violate" the claim practice principles set forth in 11 N.Y.C.R.R. § 65-3.2, (Ans. ¶ 593), by "treat[ing] each and every medical provider who submits a claim as an adversary," by "demand[ing] [a] significant burdensome verification of each and every claim submitted by a medical provider" and by "building special investigations unit ("SIU") files on each and

every medical provider" upon receipt of claims from those providers. (Ans. ¶¶ 596-98.) These statements are conclusory in nature, lack factual bases, and either constitute direct recitations of the underlying regulation, or paraphrases of the opposite of compliance with the regulation. For example, the regulation requires insurers not to "demand verification of facts unless there are good reasons to do so" and that when necessary, such verification be done "as expeditiously as possible." 11 N.Y.C.R.R. § 65-3.2(c). The PC Defendants assert plainly the opposite, that GEICO's practice is to "demand significant burdensome verification of each and every claim submitted by a medical provider," but provide no examples or specific facts to buttress the claim. (Ans. ¶ 597.)

Indeed, these allegations fail to specify what insurance claims GEICO is alleged to have handled improperly, nor even what timeframes those insurance claims fell within or which specific defendants those insurance claims pertained to. The PC Defendants point to "dozens" of past arbitration proceedings wherein GEICO was allegedly found to have acted contrary to the purpose of the no-fault regulations, but the vast majority of these proceedings did not even involve the PC Defendants, and there is no evidence that those which did involve the PC Defendants constitute specific instances of GEICO's bad behavior for which the PC Defendants are seeking some kind of direct adjudication through this counterclaim. (*Id.* ¶¶ 594-95.)

PC Defendants provide *slightly* more detailed factual allegations relating to their first counterclaim in paragraphs 602 through 607. (Ans. ¶¶ 602-07.) Here, they allege that the instant lawsuit seeks only to "recover $91,000 in claims submitted by the ten Defendant medical providers over the span of six years," showing that the stated purpose of the lawsuit must be pretextual given that "it would be illogical to spend hundreds of thousands of dollars to investigate claims and commence litigation to recover

6

$91,000 in claims." (*Id.*) In the briefing on this motion, however, the PC Defendants stated their allegations pertaining to this $91,000 number were "in error," in what this court understands to be an acknowledgement that the amount alleged in recoverable claims is actually an order of magnitude greater. (Opp. at 14 n.14). The PC Defendants have thus effectively withdrawn that allegation, the only one which could possibly have been sufficiently specific to withstand examination under the 12(b)(6) pleading standard. Fed. R. Civ. Pro. 12(b)(6).

Similarly, the PC Defendants' second counterclaim alleges that GEICO has engaged in a set of behaviors that violated 11 N.Y.C.R.R. § 65-3.5's requirement that EUO requests "be based upon the application of objective standards," (Ans. ¶ 617), and upon "specific objective justification supporting the use of such examination" and have in doing so caused the PC Defendants to incur "significant expenditures to verify countless claims through" EUOs. (*Id.* ¶¶ 616-17.) Here too, the PC Defendants engage in a mere regurgitation of the law, accompanied by conclusory statements that GEICO has not abided by that law. The PC Defendants allege that "[r]ather than utilize EUOs to verify claims," GEICO used EUOs "to create an artificial delay of their statutory time to determine claims, "to build SIU files on each and every medical provider which submits claims for payments," "as a means to intimidate medical providers," and "as a means to prepare affirmative litigation" and "coerce medial providers to walk away from outstanding claims and not bill [GEICO] in the future." (*Id.* ¶¶ 622-30.) The PC Defendants do not, however, indicate what delays they are referring to, what claims they believe led to the improper creation of SIU files, or so on. Instead, they state only that these EUO demands allegedly lacked "objective standards" and "specific objective justification." (*Id.*) These statements are conclusory and without adequate factual basis.

This second counterclaim lacks even the few specific arguably factual allegations contained in the first counterclaim. In a similar case brought by GEICO in 2019, Eastern District Judge Pamela K. Chen held that a defendant's assertion "that GEICO engaged in dilatory practices such as demanding that medical providers provide information unrelated to verifying claims under the pretext of a verification" was insufficient under 12(b)(6) when it lacked any "explanation as to what that pretext was, what sort of information was demanded, or any temporal or other context." *Cean*, 2019 WL 6253804, at *4. This court agrees with Judge Chen. The PC Defendants have failed to provide any specific information about these apparently dilatory and intimidating practices, and have therefore failed to state a claim.

### B. There is no right for a litigant to serve as a Private Attorney General

To the extent that the PC Defendants state anything resembling a factually specific claim, they appear to have done so in the tradition of claims properly brought under "private attorney general"-type statutory frameworks. In their counterclaims and opposition briefing, the PC Defendants understandably seek to ensure that if they eventually prevail in this lawsuit, they will be able to recoup the full amount owed to them under the claims outstanding, including interest. In particular, they seek reassurance that under such a circumstance, the interest awarded would be calculated from 30 days after the outstanding claim was filed. It is this court's view that if awarded, an ultimate judgment for the PC Defendants could serve as powerful evidence that GEICO's myriad specific EUO requests of the PC Defendants were unfounded, or otherwise breached the policy contract between the two parties, and thus that the interest owed should accrue from the end of the 30-day grace period afforded to Insurers under the no-fault statute, rather than from the conclusion of the instant litigation. (*See* Ans. ¶ 633.) But the case law does not support the

8

PC Defendants' contention that broad declaratory judgments announcing that the "Plaintiffs have violated the Insurance Law and implementing regulations," (Ans. ¶ 613), and "Plaintiffs demands for the EUOs violate the applicable Insurance Law and implementing regulations," (Ans. ¶ 636) on the basis that GEICO has "design[ed] and implement[ed a] policy violat[ing] Insurance Law 5106," (Ans. ¶ 631), are an available remedy for alleviating the PC Defendants' concerns.

As a general matter, there is no express or implied private right of action available to an insured party seeking to challenge an insurer's overall compliance with the New York Insurance Law or its corresponding regulations. *See Gagasoules v. MBF Leasing LLC*, No. 08-CV-2409 (ADS) (ARL), 2009 WL 10709179, at *4 (E.D.N.Y. Feb. 2, 2009) ("Typically, courts do not construe the Insurance Law as providing for a private right of action, in the absence of express language authorizing such enforcement."). For example, "[t]he Second Department has observed that enforcement of the provisions of section 2601 is more appropriately within the province and jurisdiction of the State Superintendent of Insurance." *Milligan v. GEICO Gen. Ins. Co.*, No. 16-CV-240 (JMA) (GRB), 2017 WL 9939046, at *6 (E.D.N.Y. July 14, 2017), *report and recommendation adopted*, No. 16-CV-240 (JMA)(GRB), 2018 WL 3632690 (E.D.N.Y. Mar. 31, 2018), *aff'd sub nom. Milligan v. CCC Info. Servs. Inc.*, 920 F.3d 146 (2d Cir. 2019) (quoting *Kurrus v CNA Ins. Co.*, 496 N.Y.S. 255, 255 (2d Dep't 1985). While the regulation at issue in the instant case, 11 N.Y.C.R.R. § 65-3, pertains to claim payment practices rather than unfair settlement practices, the plain language of the statute and regulation similarly do not make clear that there is an express private right of action.

An implied right to bring the type of "private attorney general" claim the PC Defendants are attempting to bring can also not properly be inferred. "Where, as here, a statute does not explicitly

9

provide for a private right of action, recovery may only be had under the statute if a legislative intent to create such a right of action may 'fairly be implied' in the statutory provisions and their legislative history." *Kamins v. United Healthcare Ins. Co. of N.Y., Inc.*, 98 N.Y.S.3d 96, 98 (2d Dep't 2019). "This inquiry involves three factors: "'(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme.'" *Id.* Here, although the putative counterclaimants are members of a class for whose particular benefit the statute was enacted (medical providers), the New York Court of Appeals has been clear in its position that "the statutory scheme evinces the legislature's intent that DFS be the primary enforcer of the Insurance Law and corresponding regulations." *Excess Line Ass'n of New York (ELANY) v. Waldorf & Assocs.*, 30 N.Y.3d 119, 124 (2017). *Cf. Young v. Toia*, 413 N.Y.S.2d 530, 531-32 (1979) (explaining the rationale for a private attorney general enforcement mechanism in the civil rights context).

There are specific instances in which New York State courts appear to have permitted private rights of action under the New York Insurance law. For instance, a private right of action has been definitively implied for the prompt pay law. *Maimonides Med. Ctr. v. First United Am. Life Ins. Co.*, 981 N.Y.S.2d 739, 743 (2d Dep't 2014). More closely related to the facts at bar, New York courts appear to have at times permitted parties to litigate under the no-fault regulations with regard to their own specifically pleaded insurance claims. *See, e.g., Integral Assist Med., P.C. v. Tri-State Consumer Ins. Co.*, 52 N.Y.S.3d 246 (2d Dept. 2017) (affirming grant of summary judgment on such claims); *Vill. Med. Supply, Inc. v. Travelers Prop. Cas. Ins. Co.*, 110 N.Y.S.3d 770 (1st Dept. 2018) (granting summary judgment on such claims). But there is no indication that the regulatory framework provides

an opportunity for private litigants to bring general claims for declarations that the insurers are "bad actors," or consistent violators of the insurance regulations, nor that such an opportunity would be consistent with the regulatory scheme. *See* 11 N.Y.C.R.R. § 65-3.2(b)-(c), 11 N.Y.C.R.R. § 65-3.5(e).

For instance, the PC Defendants cite to a category of cases in which courts have regularly adjudicated claims under the no-fault regulation. *See Kemper Indep. Ins. Co. v. AB Med. Supply, Inc.*, 131 N.Y.S.3d 556 (1st Dept. 2020); *Am. Transit Ins. Co. v. Jaga Med. Servs., P.C.*, 6 N.Y.S.3d 480 (1st Dept. 2015); *Country-Wide Ins. Co. v. Delacruz*, 168 N.Y.S.3d 63 (1st Dept. 2022). These cases all deal with situations in which insurers seek summary judgment, arguing that because the defendants had failed to appear for requested EUOs, they were not entitled to no-fault benefits. The medical provider defendants in each case appear to have asserted the insurers' non-compliance with the regulations as an explanation for why they failed to appear, rather than as a free-standing claim. And while the PC Defendants are correct that in those instances, courts held that the insurers must provide the reasons for the EUOs in order for the court to determine whether defendants had in fact breached their policy contracts by failing to appear, that narrow issue does not address whether a medical provider can bring a claim for alleged broad violations of the regulations. In other words, narrow questions about whether the insurers violated the applicable regulations with regard to a specific claim or set of claims, which would otherwise have been better left to the insurance commissioner, were properly before the court when they were specifically raised in defense by the medical provider and sufficiently adjunct to alleged breaches of policy contracts.

These cases reflect the well-settled conclusion that enactment of the legislative framework in question did not preempt the longstanding tradition of common law breach of contract claims,

and thus that such claims may still be brought. They may also reflect a willingness by New York State courts to adjudicate individual claims under this regulation. But no such specific claims have been brought here. And there is no evidence the legislature contemplated a scheme whereby individual defendant could act as enforcers of the legislative framework vis-à-vis insurers' general practices.

### C. Declaratory judgment

The PC Defendants argue that any case law rejecting private suits challenging insurers' adherence to the framework set forth by the New York Insurance law is inapplicable, because the instant counterclaims seek declaratory relief rather than punitive damages. This argument misunderstands the fundamental nature of claims for declaratory judgment. Declaratory relief is, as GEICO contends, "parasitic" to a freestanding right of action—a form of relief that can be sought when an underlying cause of action is properly found, not a method for finding a right of action where one otherwise would not exist. *See Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012) ("[A] declaratory judgment relies on a valid legal predicate."); *Roller v. Red Payments LLC*, No. 19-CV-5285 (GRB) (VMS), 2022 WL 4226094, at *7 (E.D.N.Y. Sept. 12, 2022) ("Declaratory judgment is a form of relief, not a substantive cause of action"); *Travis v. Navient Corp.*, 460 F. Supp. 3d 269, 286 (E.D.N.Y. 2020) ("[A] request for a declaratory judgment... is a request for a remedy that does not exist independent of a plausible underlying claim for relief."). In other words, where, as here, an underlying legal claim fails, so too does a declaratory judgment claim for relief.

### D. Possible Relief Available

This holding *does not* preclude the PC Defendants from, if they prevail in the instant litigation, seeking to ensure that their payments include interest tolling from the earlier date, by bringing arbitration or litigation under a breach of contract theory and

consequently objecting to the reasonableness of individual GEICO EUOs. The broad relief sought is not, however, available at this time.

The PC Defendants are correct that in the court's March 2022 Memorandum and Order, this court stated that "[i]f, at a later stage, Plaintiffs lose on their declaratory judgment claim, they will be required to pay any pending bills to all Defendants, including Macintosh, with interest." (Mar. 29 2022 M&O (Dkt. 47) at 25.) This was, however, a descriptive statement of the current posture of Plaintiffs' outstanding claims. It was not, as the PC Defendants assert, (Opp. at 18), a proscriptive statement about relief this court intends (or is able) to grant. Plaintiffs seek a judgment declaring that the PC Defendants have no right to receive payment for any currently pending bills because those claims flow from allegedly fraudulent activity. (Compl. at ¶ 4.) If that declaratory judgment is granted, GEICO need not pay out currently pending claims. If that declaratory judgment is *not* granted, and the broader RICO suit is lost, the no-fault regulations govern as though no suit had ever been brought—and GEICO are thus left owing to Defendants. That money would be owed by operation of regulation, not by way of an order from this court. If, at that time, GEICO and the PC Defendants had divergent views on the question of how much is owed on all or some of the claims, or from what date the interest on the amount owing should be calculated, and the PC Defendants disagreed with the amount GEICO ultimately paid or GEICO failed to make its payments, the PC Defendants would be free to arbitrate and/or bring breach of contract claims to resolve those issues.

## IV. CONCLUSION

For the reasons set forth above, GEICO's Motion to Dismiss the PC Defendants' counterclaims is GRANTED.

SO ORDERED.

Dated:   Brooklyn, New York
         March 31, 2023

s/Nicholas G. Garaufis
_____
NICHOLAS G. GARAUFIS
United States District Judge
